**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v OSLUND

Docket No. 165544.  Argued April 24, 2024 (Calendar No. 1).  Decided December 27, 2024.

Defendant was charged in the 53rd District Court with assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, under an aiding and abetting theory, MCL 767.39, in connection with an event in which the victim was attacked by two fellow students, TI and CB.  The two assailants hit the victim with their fists multiple times, and each assailant also kicked the victim once while wearing shoes.  CB, who was wearing a pair of slip-on shoes, also hit the victim with one of the shoes after it came off CB's foot during the assault.  Defendant, who was 16 years old at the time of the attack, did not participate in the attack.  However, he witnessed the attack, recorded it on his cell phone, and sent the video to other students.  The prosecution argued that defendant aided and abetted TI and CB during the attack by recording it on his cell phone, which encouraged TI and CB to attack the victim.  Rather than filing a juvenile petition in the family division of the Livingston Circuit Court, the prosecution filed a complaint and warrant under the automatic waiver statute, MCL 764.1f, to try defendant as an adult in the criminal division of the Livingston Circuit Court.  The prosecution asserted that waiver under the statute was appropriate because (1) the shoes worn by TI and CB were used as dangerous weapons during the attack and (2) the charged AWIGBH offense was a specified juvenile violation eligible for automatic waiver under MCL 764.1f.  Following the preliminary examination, the district court, Daniel Bain, J., found that there was probable cause to believe that defendant had aided and abetted TI and CB in the commission of AWIGBH.  In reaching that conclusion, the district court found that, for purposes of MCL 764.1f(2)(b), shoes can constitute a dangerous weapon if they are used as weapons.  On the basis of those findings, the district court bound defendant over to the criminal division of the circuit court for defendant to be tried as an adult.  In the circuit court, defendant moved to quash the bindover and dismiss the charges for lack of jurisdiction.  The circuit court, Michael P. Hatty, J., denied the motion, concluding that a shoe could be used as a dangerous weapon.  The circuit court also denied defendant's motion to dismiss for lack of jurisdiction, reasoning that, under MCL 600.606, the prosecution has discretion to charge an individual of 18 years or less as an adult.  Defendant sought leave to appeal in the Court of Appeals and moved for immediate consideration.  In an order entered July 6, 2022 (Docket No. 360675), the Court of Appeals granted the motion for immediate consideration but denied the application for leave to appeal.  Defendant sought leave to appeal, and in lieu of granting the application, the Supreme Court stayed the trial court proceedings pending the appeal and remanded the case to the Court of Appeals for consideration as on leave granted.  510 Mich 869 (2022).  In an unpublished per curiam

opinion issued on March 30, 2023 (Docket No. 360675), the Court of Appeals, JANSEN and K. F. KELLY, JJ. (HOOD, P.J., dissenting), affirmed the circuit court's decision, concluding that the circuit court had not abused its discretion by denying defendant's motion to quash the bindover and dismiss the charges for lack of jurisdiction. Judge HOOD dissented, reasoning that the shoes in question did not constitute a dangerous weapon for purposes of MCL 764.1f(2)(b) and that even if they did, there was no evidence that defendant himself had been armed with a dangerous weapon during the attack. The Supreme Court granted defendant's application for leave to appeal, 511 Mich 1009 (2023), and ordered additional briefing after oral argument, 514 Mich ___ (July 30, 2024).

In an opinion by Justice BERNSTEIN, joined by Chief Justice CLEMENT and Justices ZAHRA, CAVANAGH, WELCH, and BOLDEN, the Supreme Court *held*:

Whether the criminal division of the circuit court has jurisdiction over a juvenile defendant is a threshold jurisdictional question that must be addressed as a matter of law. For purposes of the automatic waiver statute, MCL 764.1f(2)(b) provides that AWIGBH is a "specified juvenile violation" if the juvenile is armed with a dangerous weapon. The provision requires that *the charged juvenile defendant* be armed with a dangerous weapon themselves. Only the actions of the charged juvenile defendant can be considered when determining whether the juvenile defendant was armed with a dangerous weapon for purposes of MCL 764.1f(2)(b); thus, the actions of other individuals cannot be transferred or imputed onto the charged juvenile defendant. There was no evidence in this case that defendant was armed with a dangerous weapon during the assault, so the statutory requirements for automatic waiver under MCL 764.1f(2)(b) were not met, and therefore, the criminal division of the circuit court did not have jurisdiction over defendant. Consequently, the lower courts made an error of law when interpreting MCL 764.1f(2)(b) and abused their discretion by denying defendant's motion to quash the bindover. The Court of Appeals judgment was reversed in part and vacated in part, and the case was remanded to the circuit court to grant defendant's motion to quash the bindover and transfer the case to the family division of the circuit court for further proceedings. Because it was unnecessary for the Court of Appeals to reach the issue of whether the shoes in this case were used as a dangerous weapon, the Court of Appeals' analysis of that issue was vacated.

1. Defendant argued generally in the lower-court proceedings that the circuit court lacked jurisdiction over him because the requirements of MCL 764.1f(2)(b) were not met; defendant also implicitly argued that the circuit court lacked jurisdiction over him because defendant himself was not the one armed with a dangerous weapon. Accordingly, defendant preserved the issue of whether the circuit court properly exercised jurisdiction over defendant. Regardless, the issue was reviewable because the issue was one of law and the facts necessary to resolve the issue were in the court record.

2. In general, the family division of a circuit court has exclusive jurisdiction over juvenile criminal offenders. The family division of the circuit court may waive jurisdiction over a qualified juvenile to the criminal division of the circuit court in two ways: (1) through the traditional waiver process under MCL 712A.4(1), which allows the family division to waive jurisdiction on a prosecutor's motion if a "juvenile 14 years of age or older is accused of an act that if committed by an adult would be a felony," or (2) through the automatic waiver process under MCL 764.1f,

which allows the family division to waive jurisdiction over a juvenile if the requirements of the statute are met. The automatic waiver statute provides that if "the prosecuting attorney has reason to believe that a juvenile 14 years of age or older but less than 18 years of age has committed a specified juvenile violation, the prosecuting attorney" may file a complaint and warrant on the charge. If a prosecutor takes that step, the district court conducts a preliminary examination to determine whether there is probable cause to believe that the juvenile committed the charged offense. The district court must address whether the requirements of MCL 764.1f have been met both *before* the family division's jurisdiction can be waived and *before* the juvenile defendant is bound over to the criminal division of the circuit court. Thus, whether the criminal division of the circuit court has jurisdiction over the juvenile defendant is a threshold jurisdictional question that must first be addressed as a matter of law. If the district court finds that the statutory requirements under MCL 764.1f have not been met, the criminal division of the circuit court does not have jurisdiction over the juvenile defendant, and the case must be transferred to the family division of the circuit court. However, if the district court finds that the statutory requirements under MCL 764.1f have been met and that there is probable cause to believe that the juvenile defendant committed the charged conduct, the criminal division of the circuit court then has jurisdiction over the juvenile defendant and the district court must bind the juvenile defendant over to the circuit court.

3. The prosecution did not move to waive jurisdiction to the criminal division of the circuit court as allowed by MCL 712A.4(1), so whether the requirements of an automatic waiver were established, as allowed in MCL 764.1f, was at issue in this case. Under MCL 764.1f(1), if a prosecutor thinks that the statutory requirements are met—specifically, if a "juvenile 14 years of age or older but less than 18 years of age has committed a specified juvenile violation"—"the prosecuting attorney may authorize the filing of a complaint and warrant on the charge with a magistrate concerning the juvenile." In essence, this provision gives a prosecutor discretion to charge a qualifying juvenile who has committed a specified juvenile violation as an adult or as a juvenile. Applicable to this case, MCL 764.1f(2)(b) defines "specified juvenile violation" as either first-degree home invasion, MCL 750.110a, or AWIGBH, but only "if the juvenile is armed with a dangerous weapon." Given the Legislature's use of the term "the juvenile," to obtain jurisdiction over a juvenile defendant charged with AWIGBH through the automatic waiver process, *the juvenile defendant themselves* must have been armed with a dangerous weapon. Only the actions of the charged juvenile defendant can be considered when determining whether the juvenile defendant was armed with a dangerous weapon for purposes of MCL 764.1f(2)(b); the actions of other individuals cannot be transferred or imputed onto the charged juvenile defendant. Stated more fully, if a codefendant or another individual is armed with a dangerous weapon during the incident in question, but the charged juvenile defendant is not, the statutory requirement under MCL 764.1f(2)(b) that *the juvenile defendant* be armed with a dangerous weapon has not been met. Assuming, without deciding, that the shoes worn by the two assailants were dangerous weapons and used as dangerous weapons as required by MCL 764.1f(2)(b)(*iii*), there was no evidence presented that defendant was armed with a dangerous weapon as required by MCL 764.1f(2)(b). Given that there was no evidence that defendant himself was armed with a dangerous weapon, the statutory requirements for automatic waiver under MCL 764.1f(2)(b) were not met, and the criminal division of the circuit court did not have jurisdiction over defendant. Accordingly, the lower courts committed an error of law when interpreting MCL 764.1f(2)(b) and abused their discretion by binding defendant over to the criminal division of the circuit court. Given this

conclusion, it was unnecessary for the Court of Appeals to reach the issue of whether the shoes in this case were used as a dangerous weapon, and the Court's analysis of that issue was therefore vacated.

Court of Appeals judgment reversed in part and vacated in part, and case remanded to the circuit court to grant defendant's motion to quash the bindover and transfer the case to the family division of the circuit court for further proceedings.

Justice CAVANAGH, joined by Justice WELCH, concurring, wrote separately to clarify that the requirements of MCL 764.1f(2)(b) implicate the trial court's subject-matter jurisdiction over cases involving specified juvenile violations. Subject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case. Under MCL 712A.2, the family division of the circuit court has jurisdiction over the class and character of cases involving juveniles who are alleged to have violated the law; this grant of subject-matter jurisdiction is exclusive and "superior to" other courts' subject-matter jurisdiction over the same cases. MCL 712A.2(a)(1) provides that the family division of the circuit court has subject-matter jurisdiction over juveniles who are at least 14 years old and are charged with specified juvenile violations if the prosecutor files a petition concerning the matter in the family division of the circuit court instead of filing a complaint and warrant for the specified juvenile violation with the criminal division of the circuit court. The criminal division only has subject-matter jurisdiction over a juvenile if the prosecutor has filed a complaint and warrant with the criminal division, and, under MCL 712A.2(a)(1)(B) and MCL 764.1f(1), the prosecutor may only do that if they have "reason to believe that a juvenile . . . has committed a specified juvenile violation[.]" The prosecutor did not plead in this case that defendant had committed a specified juvenile violation because there was no allegation that defendant committed AWIGBH while he was armed with a dangerous weapon. Instead, the prosecutor essentially argued that defendant, as an accomplice, should have been considered armed with a weapon as a matter of law because the principal assailants were allegedly armed with a weapon. The prosecutor's argument was without merit, though, because whether a defendant was armed with a dangerous weapon is a requirement for the definition of "a specified juvenile violation" under both MCL 712A.2(a)(1)(B) and MCL 764.1f(2)(b), but it is not an element of the *offense* that was charged. Accordingly, a theory of aiding and abetting AWIGBH would not encompass whether a defendant was armed with a dangerous weapon for the purpose of determining the existence of a specified juvenile violation. Although a juvenile defendant may be prosecuted, indicted, tried, or punished as if he committed AWIGBH under a theory of aiding and abetting, the criminal division's subject-matter jurisdiction cannot be invoked under MCL 764.1f on the same basis. For purposes of MCL 764.1f, the complaint must instead allege that the defendant themself was armed with a dangerous weapon. Although subject-matter jurisdiction is not dependent on the particular facts of the case, a court's subject-matter jurisdiction may be dependent on the pleaded allegations. The family division of the circuit court was the only court that could have subject-matter jurisdiction over this case because the complaint only alleged a violation of law that, by itself, was not a specified juvenile violation. While Justice CAVANAGH concurred with the majority's decision, she did so because there was no allegation or evidence that defendant was armed with a dangerous weapon, which precluded the criminal division of the trial court from having subject-matter jurisdiction over the case.

Justice WELCH, joined by Chief Justice CLEMENT, concurring, agreed with the majority opinion but wrote separately to provide guidance concerning the procedure for charging a juvenile offender as an adult under MCL 764.1f(2)(b). The family division of the circuit court (the family court) generally has exclusive jurisdiction over juveniles under the age of 18 who commit criminal offenses. However, under MCL 600.606(1), the criminal division of the circuit court "has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 18 years of age." Jurisdiction may be "waived" to the criminal division of the circuit court in two ways, and once the exclusive jurisdiction of the family court has been waived, it becomes vested in the criminal division of the circuit. Relevant to this case, the automatic waiver process grants prosecutors discretion to file "a complaint and warrant on the charge with a magistrate concerning the juvenile," who has allegedly committed a "specified juvenile violation" as defined by MCL 764.1f(2). The family court retains exclusive original jurisdiction over a charged juvenile if the allegations do not establish the commission of a specified juvenile violation, triggering dismissal of the felony criminal case. While certain felony offenses are a specified juvenile violation as a matter of law under MCL 764.1f(2)(a), MCL 764.1f(2)(b) provides that two other offenses—AWIGBH or home invasion—are specified juvenile offenses only if committed while "the juvenile is armed with a dangerous weapon." Even though prosecutors have charging discretion under MCL 764.1f, the judiciary has an obligation to ensure the circuit court's jurisdiction was properly invoked under MCL 764.1f(2)(b). A juvenile accused of committing AWIGBH must have been armed with a dangerous weapon for a prosecutor to charge them as an adult under MCL 764.1f(2)(b)(*iii*). That subparagraph defines "dangerous weapon" as "[a]n object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon." The Legislature's use of the conjunctive word "and" between the two elements of MCL 764.1f(2)(b)(*iii*) means that a court must perform a two-part analysis to ensure that both elements are met. Under that analysis, a court must conclude that (1) the object alleged to be a weapon is "likely to cause death or bodily injury when used as a weapon," and (2) the object was "used as a weapon or carried or possessed for use as a weapon" during the commission of the charged assault. The prosecution's charging theory in this case—that defendant was an accomplice to AWIGBH while the principal assailants were armed with a dangerous weapon—failed because the charged juvenile must be armed for MCL 764.1f(2)(b) to be invoked properly. Even if the prosecution's theory had been legally sound, the court was still required to perform the second part of the analysis, i.e., whether defendant was himself armed with a dangerous weapon for purposes of MCL 764.1f(2)(b)(*iii*). The lower courts' failure to recognize this requirement appeared to be caused by an overly broad interpretation of three judicial decisions in which the relevant Courts addressed whether a certain object could be a dangerous weapon for purposes of felonious assault. Those cases were distinguishable because those cases involved criminal charges of felonious assault, MCL 750.82, where being armed with a dangerous weapon is a statutory element of the crime that a fact-finder must find to convict a defendant. In contrast, "being armed" is not an element of AWIGBH, but being "armed with a dangerous weapon" is a requirement for waiver of the family court's jurisdiction under MCL 764.1f(2)(b), which requires an extra factual finding beyond the legal elements of AWIGBH that must be established to authorize waiver. Further, being armed with a dangerous weapon is a prerequisite to the circuit court's assumption of jurisdiction over a juvenile charged with AWIGBH under MCL 764.1f(2)(b), and that determination requires a specific factual finding. That factual finding must be made by the district court before it binds over the charged juvenile defendant for felony prosecution in circuit court, or if the district court fails to make the requisite finding, by the

circuit court once its jurisdiction has been challenged or sua sponte if concerns about jurisdiction are apparent. The district court here failed to make factual findings that the shoes worn by the principal codefendant assailants were used as weapons or possessed for use as weapons for purposes of MCL 764.1f(2)(b)(*iii*). The Court of Appeals majority failed to catch theses errors because of its overly broad application of caselaw to the automatic waiver procedures. But for the majority's resolution of the case on alternative grounds, with which Justice WELCH agreed, the lack of factual findings that the shoes at issue were used, carried, or possessed as weapons *before* accepting a waiver of the family court's exclusive jurisdiction was an error requiring reversal and remand for further proceedings. Although the issue was moot because the Court resolved the issue on alternative statutory grounds, Justice WELCH hoped her concurrence would prevent erroneous application of MCL 764.1f(2)(b)(*iii*) in future cases.

Justice VIVIANO, dissenting, disagreed with the majority's decision to address an issue that was not preserved by defendant or addressed by the lower courts. Defendant never argued that the actions of his codefendants could not be imputed to him for purposes of the automatic waiver statute. The Court of Appeals majority correctly held that the term "dangerous" weapon in the automatic waiver statute should be construed consistently with the meaning given that term under the felonious-assault statute as set forth in *People v Goolsby*, 284 Mich 375 (1938). Instead of affirming the Court of Appeals on this issue as it should have done, the majority opinion overreached to decide the unpreserved question of whether defendant was personally armed with a dangerous weapon for purposes of the automatic waiver statute. Given the lack of lower-court analysis or factual findings, the majority opinion contained significant gaps. In particular, the majority opinion did not meaningfully address the prosecution's aiding and abetting theory, and there was no clarity regarding how the majority's dictum—that "*the charged juvenile themselves must meet the statutory requirements for waiving jurisdiction under MCL 764.1f(2)(b)*"—will apply to other parts of the automatic waiver statute. Justice VIVIANO would not have addressed this complex issue without the benefit of briefing or lower-court decisions. Justice CAVANAGH went even further in her concurrence by addressing a question that no party has ever asked: whether the automatic waiver statute concerns personal jurisdiction or subject-matter jurisdiction. Because the specific type of jurisdiction implicated by the automatic waiver statute was not dispositive here, any discussion of that issue would be dicta. Addressing Justice CAVANAGH's argument, the subject-matter jurisdiction of the criminal division of the circuit court was unaffected by the automatic waiver statute. The circuit court has broad jurisdiction, and the criminal division has subject-matter jurisdiction over felony cases, like the one in this case. Indeed, under MCL 600.606(1), the "circuit court has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 18 years of age." Thus, the criminal division of the circuit court clearly has subject-matter jurisdiction over this class of cases. Notably, there is a presumption against divesting a circuit court of this broad grant of jurisdiction. To the extent subject-matter jurisdiction was implicated in this case, the relevant question was whether any statute *divests* the criminal division of the circuit court of its broad subject-matter jurisdiction, not whether a waiver under the automatic waiver statute *confers* subject-matter jurisdiction on the criminal division. MCL 712A.2(a)(1) does not clearly divest the criminal division of its broad subject-matter jurisdiction over cases like this one. Even if the family division's jurisdiction under MCL 712A.2(a)(1) is strictly exclusive rather than concurrent, that jurisdiction would not apply in this case because the prosecutor initiated the case by filing a complaint and warrant, not a motion in the family division; for that reason, the statute could not

divest the criminal division of its subject-matter jurisdiction. Given our prior decision in *People v Veling*, 443 Mich 23 (1993)—wherein the Court stated that the automatic waiver statute implicated personal jurisdiction—as reaffirmed in *People v Kiyoshk*, 493 Mich 923 (2013), questions about whether a waiver under the automatic waiver statute was proper relate only to the court's personal jurisdiction, not its subject-matter jurisdiction. The Court of Appeals did not clearly err by finding that the shoes worn by defendant's codefendants were dangerous weapons under the automatic waiver statute. By reaching the second issue in the grant order, the majority discarded the safeguards of party presentation and preservation rules. Justice VIVIANO would have affirmed the judgment of the Court of Appeals and would not have reversed the Court of Appeals on the basis of an unpreserved issue that was not argued or decided below.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED December 27, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                             No. 165544

EVAN ANDREW OSLUND,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this interlocutory appeal, we consider whether defendant was properly charged as an adult under the juvenile automatic waiver statute, MCL 764.1f. We hold that in order for the criminal division of a circuit court to have jurisdiction over a juvenile defendant pursuant to MCL 764.1f(2)(b), the juvenile defendant in question must be "armed with a dangerous weapon." Because there is no evidence that defendant was armed with a dangerous weapon during the incident at issue, the criminal division of the circuit court did

not have jurisdiction over defendant under MCL 764.1f(2)(b). We reverse the Court of Appeals' holding to the contrary, vacate the decision in part, and remand this case to the circuit court with instructions to grant defendant's motion to quash the bindover and transfer this case to the family division of the circuit court.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2021, the victim, a 16-year-old new student at Howell High School, was attacked by two other students, TI and CB. The attack lasted approximately 12 seconds. TI and CB hit the victim with their fists multiple times, and each kicked the victim once. Defendant asserts that CB was wearing a pair of slip-on shoes, referred to as slides, and that TI was wearing a pair of tennis shoes. After CB kicked the victim, one of CB's slides fell off of his foot. CB picked up the slide and hit the victim with it. The victim was later diagnosed with a concussion and suffered from post-traumatic stress disorder from the attack.

Defendant, a 16-year-old student, did not participate in the attack. However, defendant witnessed the attack, recorded the attack on his cell phone, and sent the video to other students. Defendant was charged with assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, under an aiding and abetting theory, MCL 767.39.[1] The prosecution argued that defendant aided and abetted TI and CB during the attack by recording the attack on his cell phone, which encouraged TI and CB to attack the victim. Instead of filing a juvenile petition, the prosecution filed a complaint and

---

[1] The two assailants, TI and CB, were also charged in relation to this incident. TI pleaded guilty as charged to AWIGBH, and CB pleaded guilty to assault with a dangerous weapon, MCL 750.82; neither TI nor CB appealed their convictions.

2

warrant under the automatic waiver statute, MCL 764.1f, to waive the jurisdiction of the family division of the circuit court and try defendant as an adult in the criminal division of the circuit court. The prosecution argued that the automatic waiver statute applied because (1) the shoes worn by TI and CB were used as dangerous weapons during the attack, and (2) the charged AWIGBH offense was a specified juvenile violation eligible for automatic waiver under MCL 764.1f.

During a preliminary hearing on January 7, 2022, the district court bound over defendant to the circuit court for trial after finding that there was probable cause to believe that defendant had aided and abetted TI and CB in the commission of AWIGBH. The district court found that, under MCL 764.1f(2)(b), shoes can constitute dangerous weapons if they are used as a weapon. In the circuit court, defendant moved to quash the bindover and dismiss the charges for lack of jurisdiction. The circuit court held a motion hearing on March 10, 2022. The circuit court denied defendant's motion to quash the bindover and concluded that, under MCL 764.1f(2)(b), a shoe can be used as a dangerous weapon. The circuit court also noted that the prosecution had discretion to charge an individual of 18 years or less as an adult under MCL 600.606, and therefore denied defendant's motion to dismiss the charges for lack of jurisdiction.

Defendant filed a motion for immediate consideration and an application for leave to appeal in the Court of Appeals. On July 6, 2022, the Court of Appeals granted defendant's motion for immediate consideration but denied the application for leave to appeal for failure to persuade the Court of the need for immediate appellate review. *People v Oslund*, unpublished order of the Court of Appeals, entered July 6, 2022 (Docket No. 360675). Defendant sought leave to appeal before this Court. On August 12, 2022, we

3

remanded this case to the Court of Appeals for consideration as on leave granted and stayed the trial court proceedings pending this appeal. *People v Oslund*, 510 Mich 869 (2022).

The Court of Appeals, in a split decision, held that a shoe can constitute a dangerous weapon and affirmed the circuit court's decision, finding that the circuit court had not abused its discretion by denying defendant's motion to quash the bindover and dismiss the charges for lack of jurisdiction. *People v Oslund*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 2023 (Docket No. 360675), p 4. Judge HOOD dissented, explaining that the shoes in question did not constitute dangerous weapons under the alleged facts for purposes of MCL 764.1f(2)(b), and that even if the shoes did constitute dangerous weapons, there was no evidence that *defendant* was armed with a dangerous weapon during the attack. *Oslund* (HOOD, P.J., dissenting), unpub op at 9. Defendant again sought leave to appeal before this Court. On June 23, 2023, we granted defendant's application for leave to appeal and ordered the parties to address whether:

> (1) shoes can constitute dangerous weapons for purposes of MCL 764.1f(2)(b); and (2) even if shoes can constitute dangerous weapons, the motion to quash should have been granted because there was no evidence that the defendant was "armed with a dangerous weapon" during the assault as required by MCL 764.1f(2)(b). [*People v Oslund*, 511 Mich 1009, 1009 (2023).]

## II. STANDARD OF REVIEW

This Court generally reviews a district court's bindover decision for an abuse of discretion. *People v Feeley*, 499 Mich 429, 434; 885 NW2d 223 (2016). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 978 NW2d 237 (2016) (quotation marks

4

and citation omitted). An abuse of discretion necessarily occurs when a trial court makes an error of law. *Feeley*, 499 Mich at 434.

We review de novo questions of statutory construction. *Id*. "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." *Id*. at 435. We will not read words into an unambiguous statute. *People v Breidenbach*, 489 Mich 1, 10; 798 NW2d 738 (2011).

Defendant argued generally during the lower court proceedings that the circuit court did not have jurisdiction over him because the statutory requirements under MCL 764.1f(2)(b) were not met. Accordingly, the issue of whether the circuit court properly exercised jurisdiction over defendant has been preserved. Defendant also implicitly argued that the circuit court lacked jurisdiction over him because *he* was not the one armed with a dangerous weapon.[2] Regardless, "this Court can consider an 'unpreserved issue if it is one of law and the facts necessary for resolution of the issue have been presented[.]' " *People v Washington*, 501 Mich 342, 352 n 21; 916 NW2d 477 (2018), quoting *McNeil v Charlevoix Co*, 484 Mich 69, 81 n 8; 772 NW2d 18 (2009). The question of whether a

---

[2] During the lower court proceedings, defendant's attorney argued that the circuit court should quash his bindover because "there was no weapon shown." Defendant therefore implicitly argued that the criminal division did not have jurisdiction because he was not the one armed with a dangerous weapon as required by MCL 764.1f(2)(b). But the lower courts did not directly address this question. Instead, the lower courts only addressed whether the shoes in question were dangerous weapons under MCL 764.1f(2)(b). However, as mentioned above, the Court of Appeals dissent addressed this issue and concluded that, even if we assume the shoes in question were dangerous weapons, there was no evidence that defendant himself was armed with a dangerous weapon as required by MCL 764.1f(2)(b). *Oslund* (HOOD, P.J., dissenting), unpub op at 9.

circuit court has jurisdiction over a juvenile defendant is a question of law. We conclude that the facts necessary for resolution of this issue, specifically whether *defendant* was armed with a dangerous weapon during the incident at issue, are sufficiently established to allow this Court's review because a video of the incident was included in the lower court record and presented to this Court on appeal.

## III. THE AUTOMATIC WAIVER STATUTE

The family division of a circuit court generally has exclusive jurisdiction over juvenile criminal offenders. MCL 712A.2(a)(1); MCL 764.27. But there are two ways in which the family division of the circuit court may waive jurisdiction over a qualified juvenile to the criminal division of the circuit court: the traditional waiver process and the automatic waiver process. Under the traditional waiver process, a family division may waive jurisdiction upon a prosecutor's motion if a "juvenile 14 years of age or older is accused of an act that if committed by an adult would be a felony[.]" MCL 712A.4(1).

Such a motion was not made in this case. At issue here is the automatic waiver process. Under the automatic waiver statute, MCL 764.1f, the family division of a circuit court may waive jurisdiction over a juvenile to the criminal division of the circuit court if the statutory requirements in MCL 764.1f are met. If a prosecutor thinks that the statutory requirements are met—specifically, if a "juvenile 14 years of age or older but less than 18 years of age has committed a specified juvenile violation"—"the prosecuting attorney may authorize the filing of a complaint and warrant on the charge with a magistrate concerning the juvenile." MCL 764.1f(1). This essentially gives the prosecutor discretion to charge a qualifying juvenile who has committed a "specified juvenile violation" as an adult or as a

6

juvenile. See MCL 764.1f(1). "Specified juvenile violation" is defined in MCL 764.1f(2). Relevant to this case, MCL 764.1f(2)(b) defines "specified juvenile violation" as either first-degree home invasion, MCL 750.110a, or AWIGBH, but only "if *the juvenile* is armed with a dangerous weapon." (Emphasis added.) MCL 764.1f(2)(b) defines "dangerous weapon" as:

> (*i*) A loaded or unloaded firearm, whether operable or inoperable.

> (*ii*) A knife, stabbing instrument, brass knuckles, blackjack, club, or other object specifically designed or customarily carried or possessed for use as a weapon.

> (*iii*) An object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon.

> (*iv*) An object or device that is used or fashioned in a manner to lead a person to believe the object or device is an object or device described in subparagraphs (*i*) to (*iii*).

If a prosecutor decides to charge the juvenile as an adult, the district court generally conducts a preliminary examination to determine whether there is probable cause to believe that the juvenile in question committed the charged offense. MCL 764.1f(1). This probable-cause inquiry includes determining whether the requirements under MCL 764.1f have been met. The district court must therefore address whether the statutory requirements under MCL 764.1f have been met *before* the family division's jurisdiction can be waived, and *before* the juvenile defendant is bound over to the criminal division of the circuit court. See *People v Veling*, 443 Mich 23, 31-32; 504 NW2d 456 (1993). In other words, whether the criminal division of the circuit court has jurisdiction over the

7

juvenile defendant is a threshold jurisdictional question that must be addressed as a matter of law.[3]

If the district court finds that the statutory requirements under MCL 764.1f have not been met, the circuit court does not have jurisdiction over the juvenile defendant, and the case must be transferred to the family division of the circuit court. *Veling*, 443 Mich at 31-32; MCL 766.14(2). But if the district court finds that the statutory requirements under MCL 764.1f have been met and that there is probable cause to believe that the juvenile defendant committed the charged conduct, the criminal division of the circuit court then has jurisdiction over the juvenile defendant, see *Veling*, 443 Mich at 32, and the district court must bind the juvenile defendant over to the circuit court.

In this case, we asked the parties to address two parts of the automatic waiver statute: (1) whether the shoes in question were "dangerous weapon[s]" for purposes of MCL 764.1f(2)(b), and (2) even if a shoe can constitute a dangerous weapon, whether defendant's motion to quash should have been granted because *he* was not "armed with a dangerous weapon" as required by MCL 764.1f(2)(b). *Oslund*, 511 Mich at 1009. We focus on the second question in this opinion.[4]

To address this question, we must start with the language of the automatic waiver statute itself. *People v Williams*, 491 Mich 164, 172; 814 NW2d 270 (2012). We hold

---

[3] The circuit court also has jurisdiction to determine whether a qualified juvenile defendant committed a "specified juvenile violation . . . ." MCL 600.606(1). Both MCL 764.1f(2) and MCL 600.606(2) define "specified juvenile violation" identically.

[4] Because we resolve this case solely on the basis of the second question, we decline to address whether the shoes at issue constitute dangerous weapons. Accordingly, we also decline the prosecution's request at oral argument to remand this case for additional proceedings and factual findings.

8

that, according to the unambiguous statutory language in MCL 764.1f(2)(b), to properly obtain jurisdiction over a juvenile defendant charged with AWIGBH through the automatic waiver process, *the juvenile defendant themselves* must be armed with a dangerous weapon. MCL 764.1f(2)(b). The statute's use of the term "*the* juvenile" unambiguously refers to the charged juvenile in question. MCL 764.1f(2)(b) (emphasis added). For purposes of automatic waiver, the actions of other individuals cannot be transferred or imputed onto the charged juvenile defendant. In other words, if a codefendant or another individual is armed with a dangerous weapon during the incident in question, but the charged juvenile defendant is not, the statutory requirement under MCL 764.1f(2)(b) that *the juvenile defendant* be armed with a dangerous weapon has not been met.

If the Legislature had intended to allow the acts of other co-offenders to be transferred to or be imputed to the charged juvenile for the purposes of automatic waiver, it would not have specified that "the juvenile" must be armed with a dangerous weapon in order for a specified juvenile violation to occur under MCL 764.1f(2)(b). Instead, it would have stated only that a dangerous weapon must be used during the incident at issue.[5] The Legislature's use of the phrase "the juvenile" therefore expresses an intent to consider only the actions of the charged juvenile in question, and not more broadly consider the mere presence of a dangerous weapon during the incident. To conclude otherwise would require this Court to read language into the statute that was not contemplated by the Legislature.

---

[5] The Legislature also could have modified the requirements of MCL 764.1f(2)(b) by enacting an aiding and abetting exception. The Legislature's choice not to do so is notable considering that the Legislature has permitted automatic waiver of a qualifying juvenile into adult criminal court proceedings under theories of solicitation or conspiracy to commit a specified juvenile offense. See MCL 764.1f(2)(f) and (g).

9

See *Breidenbach*, 489 Mich at 10. As a result, only the actions of the charged juvenile defendant can be considered when determining whether the juvenile defendant was armed with a dangerous weapon for purposes of MCL 764.1f(2)(b).

This result aligns with the rest of the automatic waiver statute. The automatic waiver statute only applies to juveniles 14 years of age or older and less than 18 years of age. MCL 764.1f(1). This age requirement cannot be transferred to other codefendants or other individuals. For example, if a 13-year-old and a 15-year-old were charged with AWIGBH regarding their involvement in the same assault, a prosecutor could not charge the 13-year-old under the automatic waiver statute because they would not meet the statutory age requirement. In turn, the age of the 15-year-old could not be used to apply the automatic waiver statute to the 13-year-old. Similarly, the requirement that a juvenile be armed with a dangerous weapon also cannot be transferred from a codefendant or principal. We therefore hold that a juvenile defendant themselves must be armed with a dangerous weapon in order for MCL 764.1f(2)(b) to apply.[6]

With this in mind, we consider whether defendant should have been bound over to the circuit court. We conclude that the lower courts committed an error of law and abused their discretion by finding that the automatic waiver statute applied. See *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). There was no evidence that all of the statutory

---

[6] Our holding does not prohibit prosecutors from charging a juvenile as an adult under the automatic waiver statute through an aiding and abetting theory under MCL 767.39. Prosecutors may still attempt to waive jurisdiction over a qualified juvenile defendant under an aiding and abetting theory if they think that *the charged juvenile* has committed a specified juvenile violation under MCL 764.1f(2). Our holding merely clarifies that *the charged juvenile themselves* must meet the statutory requirements for waiving jurisdiction under MCL 764.1f(2)(b).

requirements under MCL 764.1f(2)(b) were met; specifically, the lower courts did not find that *defendant* was armed with a dangerous weapon during the assault. Assuming without deciding that the shoes worn by the two assailants in this case were dangerous weapons and were used as dangerous weapons,[7] there was no evidence presented that *defendant* was armed with a dangerous weapon as required by MCL 764.1f(2)(b). It is undisputed that defendant merely videotaped the assault on his cell phone and did not take part in the assault. We hold that because there was no evidence that defendant himself was armed with a dangerous weapon, defendant did not commit a "specified juvenile violation" under MCL 764.1f(2)(b). Therefore, the automatic waiver statute does not apply in this case, and the criminal division of the circuit court did not have jurisdiction over defendant under MCL 764.1f.

## IV. CONCLUSION

We hold that for the automatic waiver statute to apply under MCL 764.1f(2)(b), the charged juvenile defendant must have been armed with a dangerous weapon. Because there is no evidence that defendant here was armed with a dangerous weapon during the assault, the statutory requirements for automatic waiver under MCL 764.1f(2)(b) were not met, and the criminal division of the circuit court did not have jurisdiction over defendant. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the circuit court with instructions to grant defendant's motion to quash the bindover and

---

[7] As mentioned above, because we resolve this case on the jurisdictional question of whether defendant was armed with a dangerous weapon, we do not address the additional arguments raised by the parties regarding whether the shoes in question constituted dangerous weapons, or whether the shoes in question were used as dangerous weapons or carried or possessed for use as dangerous weapons, MCL 764.1f(2)(b)(*iii*).

11

transfer this case to the family division of the circuit court for further proceedings. In light of our disposition of this case, it was unnecessary for the Court of Appeals to reach the issue of whether the shoes in this case were used as dangerous weapons. We therefore vacate the Court of Appeals' analysis of that issue. We do not retain jurisdiction.

Richard H. Bernstein
Elizabeth T. Clement
Brian K. Zahra
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                  No. 165544

EVAN ANDREW OSLUND,

      Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

I concur with the majority decision, and I write separately to clarify that I believe that the requirements of MCL 764.1f(2)(b) implicate the trial court's subject-matter jurisdiction over cases involving specified juvenile violations.

As this Court has recently explained, "[s]ubject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case." *People v Washington*, 508 Mich 107, 121; 972 NW2d 767 (2021). Subject-matter jurisdiction is "not dependent on the particular facts of the case but, instead, is dependent on the character or class of the case pending." *Id*. (quotation marks and citation omitted). It is well settled that subject-matter jurisdiction is derived from constitutional and statutory provisions. *Id*.

The Michigan Constitution provides that the circuit court, as a "trial court of general jurisdiction," has "original jurisdiction in all matters not prohibited by law . . . ." Const 1963, art 6, §§ 1 and 13. Our Legislature codified this general proposition and statutorily created separate divisions of the trial court with exclusive subject-matter jurisdiction over different characters and classes of cases. See MCL 600.151 and MCL 600.601.

Pertinent to this case, our Legislature created the family division of the circuit court with the requirement that every judicial circuit must have a family division. See MCL 600.1001; MCL 600.1003. Our Legislature also granted the family division of the circuit court "sole and exclusive jurisdiction over . . . [c]ases involving juveniles as provided" in "MCL 712A.1 to MCL 712A.32." MCL 600.1021(1)(e). Specifically, MCL 712A.2 states, in relevant part:

The court[1] has the following authority and jurisdiction:

(a) Exclusive original jurisdiction superior to and regardless of the jurisdiction of another court in proceedings concerning a juvenile under 18 years of age who is found within the county if 1 or more of the following apply:

(1) Except as otherwise provided in this sub-subdivision, the juvenile has violated any municipal ordinance or law of the state or of the United States. If the court enters into an agreement under section 2e of this chapter, the court has jurisdiction over a juvenile who committed a civil infraction as provided in that section. The court has jurisdiction over a juvenile 14 years of age or older who is charged with a specified juvenile violation only if the prosecuting attorney files a petition in the court instead of authorizing a complaint and warrant. As used in this sub-subdivision, "specified juvenile violation" means 1 or more of the following:

* * *

(B) A violation of section 84 or 110a(2) of the Michigan penal code, 1931 PA 328, MCL 750.84 and 750.110a, if the juvenile is armed with a dangerous weapon. As used in this paragraph, "dangerous weapon" means 1 or more of the following [enumerated items.]

Stated another way, the family division of the circuit court has exclusive subject-matter jurisdiction over the class and character of cases that involve juveniles who are alleged to

---

[1] MCL 712A.1(e) defines "court" for this chapter as "the family division of circuit court."

have violated the law, and this grant of subject-matter jurisdiction is exclusive and "superior to" other courts' subject-matter jurisdiction over the same cases.

The statute further identifies a subset of cases involving juveniles who are alleged to have committed "specified juvenile violations." Under MCL 712A.2(a)(1), the family division of the circuit court only has subject-matter jurisdiction over juveniles who are at least 14 years old and are charged with specified juvenile violations if the prosecutor files a petition concerning the matter in the family division of the circuit court instead of filing a complaint and warrant for the specified juvenile violation with the criminal division of the trial court. MCL 764.1f addresses the circumstances in which a prosecutor can file a complaint and warrant for a specified juvenile violation with the criminal division, i.e., the circumstances under which the criminal division has subject-matter jurisdiction over a juvenile offender:

> (1) If the prosecuting attorney has reason to believe that a juvenile 14 years of age or older but less than 18 years of age has committed a specified juvenile violation, the prosecuting attorney may authorize the filing of a complaint and warrant on the charge with a magistrate concerning the juvenile.

> (2) As used in this section, "specified juvenile violation" means any of the following:

> * * *

> (b) A violation of section 84 or 110a(2) of the Michigan penal code, 1931 PA 328, MCL 750.84 and 750.110a, if the juvenile is armed with a dangerous weapon. As used in this subdivision, "dangerous weapon" means 1 or more of the following [enumerated items.]

Thus, the criminal division only has subject-matter jurisdiction over a juvenile if the prosecutor has filed a complaint and warrant with the criminal division, and, under MCL

764.1f(1), the prosecutor may only do that if they have "reason to believe that a juvenile . . . has committed a specified juvenile violation[.]"

In this case, defendant was charged with assault with the intent to commit great bodily harm less than murder (AWIGBH), a violation of the law of this state under MCL 750.84. The prosecutor, however, did not file a petition in the family court premised upon the allegation that defendant violated MCL 750.84. Instead, the prosecutor alleged that defendant had committed a "specified juvenile violation" and filed a complaint and warrant with the criminal division of the trial court under MCL 764.1f. The specified juvenile violation at issue in this case, as stated by the majority and as defined under both MCL 712A.2(a)(1)(B) and MCL 764.1f(2)(b), concerns a violation of MCL 750.84 when "the juvenile is armed with a dangerous weapon."

The prosecutor, however, did not plead that defendant had committed a specified juvenile violation because, as the majority correctly points out, there was no allegation that defendant committed AWIGBH while he was armed with a dangerous weapon. Instead, the prosecutor relied on the theory of aiding and abetting, under MCL 767.39, to argue that defendant was armed with a dangerous weapon because the principal offenders (or assailants) were allegedly armed with dangerous weapons when defendant aided them. The prosecutor's theory was essentially one of constructive possession—because the principal assailants were allegedly armed with a weapon, defendant, as an accomplice, should be considered armed with a weapon as a matter of law.

The prosecutor's argument is misplaced, however, because MCL 767.39 states that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may

4

hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he *had directly committed such offense*." (Emphasis added.) As stated, the relevant offense in this case is AWIGBH, which only requires (1) an assault with (2) intent to do great bodily harm, less than murder. MCL 750.84(1)(a). Whether a defendant was armed with a dangerous weapon is a requirement for the definition of a specified juvenile violation under both MCL 712A.2(a)(1)(B) and MCL 764.1f(2)(b), but it is not an element of the *offense* that was charged. Accordingly, a theory of aiding and abetting AWIGBH would not encompass whether a defendant was armed with a dangerous weapon for the purposes of a specified juvenile violation because the existence of that condition is not an element of the offense that was charged. Put simply, although a juvenile defendant may be prosecuted, indicted, tried, or punished as if he committed AWIGBH under a theory of aiding and abetting, the criminal division's subject-matter jurisdiction cannot be invoked under MCL 764.1f on the same basis. For purposes of MCL 764.1f, the complaint must instead allege that the defendant himself was armed with a dangerous weapon rather than merely relying on an aiding-and-abetting theory.

Further, even though subject-matter jurisdiction is not dependent on the particular facts of the case, a court's subject-matter jurisdiction may be dependent on the pleaded allegations. See *Hodges v State Farm Mut Auto Ins Co*, 499 Mich 211, 213; 884 NW2d 238 (2016). Much like a district court's subject-matter jurisdiction in civil actions is dependent on a good-faith allegation that the amount in controversy does not exceed $25,000,[2] the criminal division of the trial court only has subject-matter jurisdiction over

_____

[2] The Legislature established the district court division of the trial court, MCL 600.8101, and granted that court exclusive subject-matter jurisdiction "in civil actions when the

5

"specified juvenile violations" when the prosecutor "has reason to believe" that the violation has been committed and, in this case, that the juvenile was armed with a dangerous weapon. As stated, the prosecutor's complaint does not include any indication that there was a reason to believe that defendant, himself, was armed with a dangerous weapon. Although the prosecutor's theory was that the assailants' possession of an allegedly dangerous weapon could be imputed to defendant via accomplice liability, this theory, as previously discussed, is inapplicable. And, in any event, an inapplicable legal theory does not substitute for a factual basis for the prosecutor to have "reason to believe" that defendant was armed. The criminal division of the trial court was, therefore, without subject-matter jurisdiction over this complaint despite it having been authorized and filed by the prosecutor. Instead, the family division of the circuit court is the only court that could have subject-matter jurisdiction over this case because the complaint only alleged a violation of law that, by itself, was not a specified juvenile violation.[3]

---

amount in controversy does not exceed $25,000.00," MCL 600.8301, and in certain criminal matters as delineated under MCL 600.8311.

[3] This Court's rulings regarding the trial court's jurisdiction over juvenile defendants in *People v Veling*, 443 Mich 23; 504 NW2d 456 (1993), and *People v Kiyoshk*, 493 Mich 923 (2013), do not conflict with my conclusion here. The statute at issue in *Veling* did not contain the requirement that the juvenile defendant must be armed with a dangerous weapon in order for the allegation to be considered an "enumerated offense" (later amended to read as a "specified juvenile violation"). *Veling* primarily concerned the effect of the age of the defendant on challenges to the trial court's personal jurisdiction over the defendant. The *Veling* Court found it obvious or unremarkable that the criminal division of the trial court was required to have subject-matter jurisdiction over the "enumerated offense" (or "specified juvenile violation"):

> Once personal jurisdiction is established, the magistrate must have probable cause to believe, as part of the preliminary examination, that the juvenile committed the charged enumerated offense. See MCL 766.14(2);

6

Therefore, while I concur with the majority's decision to remand this case to the circuit court with the instruction to grant defendant's motion to quash the bindover, I do so because there was no allegation or evidence that defendant was armed with a dangerous weapon, and this precluded the criminal division of the trial court from having subject-matter jurisdiction over this case.

Megan K. Cavanagh
Elizabeth M. Welch

---

MSA 28.932(2). If this belief is not sustained by probable cause, the magistrate must transfer the case back to the probate court, and the circuit court loses jurisdiction over the juvenile. *Id*. If probable cause is established, the circuit court has both personal jurisdiction over the juvenile and, of course, *subject matter jurisdiction over the alleged enumerated offense*. [*Veling*, 443 Mich at 31-32 (emphasis added).]

This case is distinguishable from *Veling* because the statute at issue now requires a defendant to be "armed with a dangerous weapon" for the specified juvenile violation that defendant in this case was charged with. A fact which, as discussed, was not alleged by the prosecutor in the charging information. Caselaw that recognizes that the criminal division has subject-matter jurisdiction over an "enumerated offense" or "specified juvenile violation" does not inform the question here—i.e., whether the criminal division has subject-matter jurisdiction over a complaint that does not, in fact, allege a specified juvenile violation. Further, this Court's order in *Kiyoshk* only cited *Veling* for the proposition that a defendant's age was a question of personal jurisdiction, a question that is not at issue in this case. *Kiyoshk*, 493 Mich at 923 ("Defendant's *age* when the offense was committed does not pertain to the 'kind or character' of the case, but rather constitutes a defendant-specific, 'particular fact[].' Whether defendant was of an *age* that made circuit court jurisdiction appropriate is thus a question of personal jurisdiction.") (emphasis added; alteration in *Kiyoshk*).

7

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                         No. 165544

EVAN ANDREW OSLUND,

      Defendant-Appellant.

_____

WELCH, J. (*concurring*).

I join the majority opinion and write separately to provide guidance concerning the procedure for charging a juvenile offender as an adult under MCL 764.1f(2)(b). Although this discussion is not necessary to the Court's resolution of the present appeal given the holding of the majority, my hope is that clarification will help to minimize future improper waivers of the family division of a circuit court's *exclusive original* jurisdiction over juveniles who are charged under MCL 764.1f(2)(b).

## I. PROCEDURAL HISTORY

Defendant was charged with the felony of assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, under an aiding and abetting theory, MCL 767.39, premised on the assaultive conduct of two classmates at Howell High School and defendant's alleged videorecording of the assault. The prosecutor directly charged defendant in district court as an adult with AWIGBH pursuant to an aider and abettor

theory.[1]  This charging decision was premised on AWIGBH being a "specified juvenile violation," MCL 764.1f(1) and (2), when "the juvenile is armed with a dangerous weapon," MCL 764.1f(2)(b), during the commission of the charged offense.  The prosecutor's position was that because the codefendants used shoes[2] to kick and hit the victim, each shoe became a "dangerous weapon" for purposes of MCL 764.1f(2)(b).  According to the prosecutor's theory, the codefendants' status of being armed transferred to defendant pursuant to MCL 767.39, and thus, there was no need for the motion-waiver process set forth in MCL 712A.4(1).

Given the prosecutor's theory, defendant's case was initiated by filing a criminal complaint in district court—the same process that is used to charge an adult with AWIGBH.  The district court held a preliminary examination on January 2, 2022, with a focus on determining whether probable cause existed to believe that defendant had aided and abetted in the assault.  The prosecution presented evidence as to each element of AWIGBH and evidence as to the legal standard for aiding and abetting criminal liability.

---

[1] Criminal prosecution for aiding and abetting a crime requires proof of the following:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.  [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and citations omitted; alteration in original).]

[2] As the majority noted, the shoes at issue appear to be a pair of athletic slide sandals and a pair of tennis shoes.

The district court held that these requirements were established by a preponderance of the evidence.

As the majority has recognized, the district court was also required to determine *whether defendant himself was armed with a dangerous weapon* for purposes of MCL 764.1f(2)(b)(*iii*) during the alleged assault. In analyzing this issue, the district court considered adult felonious assault cases in which this Court and the Court of Appeals have held that footwear can be a dangerous weapon for purposes of MCL 750.82 (felonious assault) and its statutory predecessor. See *People v Goolsby*, 284 Mich 375; 279 NW 867 (1938); *People v Buford*, 69 Mich App 27; 244 NW2d 351 (1976); *People v Hale*, 96 Mich App 343; 292 NW2d 204 (1980), judgment vacated on other grounds 409 Mich 937 (1980). The district court held that under *Goolsby*, *Buford*, and *Hale*, a shoe *can* constitute a dangerous weapon, but the court made no factual findings as to *whether this defendant was armed* with the shoes or whether he used, carried, or possessed the shoes as a dangerous weapon:

> I think the video speaks for itself. I think the Court is bound by the case law on this. And I think that, again, I think there's a catch-all provision. I think the legislature didn't specifically exclude shoes or anything like that. They're pretty clear on everything else, but again, they had that sub three in there—an object that is likely to cause death or bodily injury when used, when used as a weapon. And I guess you can make the argument, based on whoever was doing the kicking, your guy I guess was, you know, he had the white shoes that, you know, maybe came off. I don't know if he kicked them off or, you know, wanted them off or you argue one kick might have been to the head, but the rest were to the body that was after the shoes came off. I don't know if that was luck. I don't know where he was aiming. You know, those are all questions of fact for somebody else to decide. But when things started, he got kicked when the shoe was on. And I think that the catch-all catches it.

3

So based upon the case law that we've cited in this motion and the previous motion hearing, uh, and I think I'm bound by, you know, *People* [*v*] *Hale* and the subsequent decisions after that. The *Goolsby* case, as counsel has indicated. So it falls under the catch-all and object is likely to cause death or bodily injury when used as a weapon.

The district court bound defendant and his two codefendants over to the circuit court for trial.

Defendant then moved in circuit court to quash the bindover and to dismiss the charges. At a hearing in March 2022, the circuit court acknowledged that there were no cases involving juvenile proceedings that addressed the question of whether a shoe constitutes a dangerous weapon for purposes of MCL 764.1f. In the absence of such cases, the circuit court turned to *Goolsby*, *Buford*, and *Hale* and, like the district court judge, determined that a shoe can constitute a dangerous weapon and denied the motion to quash. The circuit court judge did not make a finding as to whether the shoes were in fact used, carried, or possessed as dangerous weapons by defendant in this case.

After a remand from this Court for consideration as on leave granted, *People v Oslund*, 510 Mich 869 (2022), the Court of Appeals affirmed in a split decision. Much like the courts before it, the majority relied on the definition and legal analysis of "dangerous weapon" provided by *Goolsby*, *Buford*, and *Hale* to conclude that a shoe *can* constitute a dangerous weapon for purposes of MCL 764.1f(2)(b), but it made no finding as to whether, in fact, the shoes at issue in this case were used, carried, or possessed as dangerous weapons. *People v Oslund*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 2023 (Docket No. 360675), pp 3-4. Judge HOOD dissented and opined that (1) the majority erred by adopting a common law definition of "dangerous weapon" rather than interpreting the statutory definition in MCL 764.1f(2); (2) the shoes at issue did not

4

constitute dangerous weapons under the facts alleged; (3) the lack of findings as to whether the shoes were used as dangerous weapons was an error requiring reversal; and (4) there was no evidence that this defendant was armed with a dangerous weapon. *Id*. at 5-9 (HOOD, P.J., dissenting).

## II. WAIVER STATUTES AND JUVENILE JURISDICTION

"Generally, the family division of the circuit court (family court) has exclusive jurisdiction over juveniles under [18] years of age who commit criminal offenses." *People v Conat*, 238 Mich App 134, 139; 605 NW2d 49 (1999), citing MCL 712A.1(1)(c) and MCL 712A.2(a)(1) (outlining the circumstances under which the family court will have "[e]xclusive original jurisdiction superior to and regardless of the jurisdiction of another court in proceedings concerning a juvenile under 18 years of age"). But the criminal division of the circuit court "has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 18 years of age." MCL 600.606(1). See also MCL 764.1f(1). Jurisdiction may be "waived" to the criminal division of the circuit court in two different ways. The first is by an automatic waiver through the charging documents filed by a prosecutor if the juvenile is at least 14 years old and the offense is a specified juvenile violation. See MCL 600.606 and MCL 764.1f. The second is by the traditional motion-waiver process under MCL 712A.4, which requires a prosecutor to file a motion to initiate the process and a prewaiver hearing in the family court. Once the exclusive jurisdiction of the family court has been waived, it becomes

5

vested in the criminal division of the circuit court and the charged juvenile faces the possibility of the same stiff felony penalties as an adult.[3]

This case concerns the automatic waiver process. Under MCL 764.1f(1), prosecutors have discretion to invoke this process by the "filing of a complaint and warrant on the charge with a magistrate[4] concerning the juvenile," who has allegedly committed a "specified juvenile violation" as defined by MCL 764.1f(2). See also *Conat*, 238 Mich App at 140. If the allegations do not establish the commission of a specified juvenile violation, then the family court retains exclusive original jurisdiction over the charged juvenile, MCL 712A.1(1)(c); MCL 712A.2(a)(1), such that the felony criminal case must be dismissed.

---

[3] Some relevant statutes use the terms "waive" and "waiver" as applied to jurisdiction over a juvenile matter vesting in particular divisions of the circuit court. Such use of these terms is confusing because they do not refer to "waiver" as it is commonly used in the legal context. See *Black's Law Dictionary* (12th ed) (defining "waiver" as "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage" and as "[a]n instrument by which a person relinquishes or abandons a legal right or advantage"); *Adair v Michigan*, 497 Mich 89, 104; 860 NW2d 93 (2014) ("Waiver is the intentional relinquishment of a known right.") (quotation marks and citation omitted). The use of "waiver" in the context of a juvenile being prosecuted as an adult does not fit within these traditional understandings of the term because a juvenile is not knowingly giving up any rights and a prosecutor is, in fact, invoking prosecutorial rights that have been granted by the Legislature. While confusing, these are the terms the Legislature has chosen.

[4] MCL 764.1f is a part of the Code of Criminal Procedure, MCL 760.1 *et seq*., which defines "magistrate" as "a judge of the district court or a judge of a municipal court. Magistrate does not include a district court magistrate, except that a district court magistrate may exercise the powers, jurisdiction, and duties of a magistrate if specifically provided in this act, the revised judicature act of 1961, 1961 PA 236, MCL 600.101 to 600.9947, or any other statute." MCL 761.1(*l*). Thus, a district court judge often performs functions that are assigned to a magistrate under the Code of Criminal Procedure.

6

Certain felony offenses are a "specified juvenile violation" as a matter of law under MCL 764.1f(2)(a).[5] This means that the mere filing of a criminal complaint, followed by the presentation of evidence at a preliminary examination establishing probable cause that the juvenile committed the felony, is sufficient to invoke the circuit court's criminal division jurisdiction. Two other felonies—violations of MCL 750.84 (AWIGBH) or MCL 750.110a (home invasion)—are specified juvenile violations only if committed while "the juvenile is armed with a dangerous weapon." MCL 764.1f(2)(b). Although MCL 764.1f grants prosecutors charging discretion, the judiciary retains an obligation to ensure that the circuit court's jurisdiction was properly invoked under MCL 764.1f(2)(b).

## III. ANALYSIS

A juvenile accused of committing AWIGBH must have been armed with a dangerous weapon for a prosecutor to charge them as an adult under MCL 764.1f(2)(b)(*iii*). "Dangerous weapon" is statutorily defined by the list contained in MCL 764.1f(2)(b)(*i*) to (*iv*).[6] The first two definitions list specific objects that are understood to be weapons, such

---

[5] The complete list of specified juvenile violations under MCL 764.1f(2)(a) is as follows: MCL 750.72 (first-degree arson); MCL 750.83 (assault with intent to commit murder); MCL 750.86 (assault with intent to maim); MCL 750.89 (assault with intent to rob and steal while armed); MCL 750.91 (attempt to murder); MCL 750.316 (first-degree murder); MCL 750.317 (second-degree murder); MCL 750.349 (kidnapping); MCL 750.520b (first-degree criminal sexual conduct); MCL 750.529 (armed robbery); MCL 750.529a (carjacking); and MCL 750.531 (bank robbery).

[6] I take no position regarding the disagreement between the majority and dissenting opinions in the Court of Appeals as to whether the common law definition of "dangerous weapon" from judicial decisions concerning felonious assault is consistent with the statutory definition of the term. In my opinion, any difference between the competing definitions of "dangerous weapon" would have no material effect on the legal analysis in this case.

as firearms, stabbing instruments, brass knuckles, and objects that are "specifically designed or customarily carried or possessed for use as a weapon." MCL 764.1f(2)(b)(*i*) and (*ii*). When a listed object or customary weapon is involved, a court need only conclude that the juvenile was in possession of the object for the juvenile to be armed with a dangerous weapon.

The operation of the catch-all provision in MCL 764.1f(2)(b)(*iii*) is different. That subparagraph states that a dangerous weapon includes "[a]n object that is likely to cause death or bodily injury when used as a weapon *and that is used as a weapon or carried or possessed for use as a weapon*." MCL 764.1f(2)(b)(*iii*) (emphasis added). The use of the conjunctive word "and" between the two elements of MCL 764.1f(2)(b)(*iii*) means that a court must perform a two-part analysis to ensure that both elements are met.[7] First, the court must conclude that the object that is alleged to be a weapon is "likely to cause death

---

[7] This Court has long recognized that, absent a compelling contextual reason for a contrary reading, "and" is a conjunctive term, and "or" is a disjunctive term. Compare *People v Bullock*, 440 Mich 15, 30-31; 485 NW2d 866 (1992) (recognizing a material textual difference between the use of "and" in Const 1963, art 1, § 16, and "or" in the Eighth Amendment of the United States Constitution), *People v Sanford*, 402 Mich 460, 473; 265 NW2d 1 (1978) (holding that "the assault with intent to rob unarmed statute is conjunctive; there must be an assault with force and violence. The attempted robbery unarmed statute is disjunctive; the offense can be accomplished either by force and violence, or by assaulting, or putting in fear"), and *Mich Pub Serv Co v Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949) (" 'And' is a conjunctive, used to denote a joinder, a union. 'Or' is the opposite, a disjunctive, used to indicate a disunion, a separation, an alternative."), with *People v Allen*, 507 Mich 597, 607 n 16; 968 NW2d 532 (2021) (holding that the "and" in MCL 791.239 is disjunctive because "the statute specifically states that the warrantless arrest and detention is permitted if the appropriate parole official either reasonably suspects a parole violation or obtained a warrant under MCL 791.238(1)"), and *Elliott Grocer Co v Field's Pure Food Market, Inc*, 286 Mich 112, 115; 281 NW 557 (1938) ("Whenever it is reasonably necessary to accomplish the obvious purpose of a statute the word 'and' may be read not only in the conjunctive but also in the disjunctive.").

or bodily injury when used a weapon . . . ." *Id*. Second, the court must conclude that the object was "used as a weapon or carried or possessed for use as a weapon" during the commission of the charged assault. *Id*. The pertinent legal question for purposes of MCL 764.1f(2)(b)(*iii*) is not merely whether the object *can* be used as a weapon; instead, the object must also have been *used, carried, or possessed as a weapon*. That both elements must be met is clear from the face of MCL 764.1f(2)(b)(*iii*).

In this case, the prosecution alleged that defendant was an accomplice to AWIGBH while the principal codefendant assailants were armed with a dangerous weapon under MCL 764.1f(2)(b)(*iii*). As the majority holds, this charging theory fails because the charged juvenile must be armed for MCL 764.1f(2)(b) to be properly invoked. Additionally, because MCL 764.1f(2)(b) is more recently enacted and more specific, MCL 764.1f(2)(b) controls over conflicts with the general accomplice-liability language of MCL 767.39. See *People v Dupree*, 511 Mich 1, 9; 993 NW2d 185 (2023) (explaining that "[s]pecific [statutory] provisions . . . prevail over any arguable inconsistency with the more general rule in a different statute") (quotation marks and citation omitted; second alteration in original).[8] Even if the prosecution's charging theory was legally sound, the court was still required to determine whether defendant himself was "armed with a dangerous weapon" within the meaning of MCL 764.1f(2)(b)(*iii*).[9] Such factual findings could have

---

[8] See MCL 767.39 ("Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.").

[9] Although I address only charges brought under MCL 764.1f(2)(b)(*iii*) because that is how defendant was charged, aspects of my analysis also likely apply to charges brought under the second catch-all provision—MCL 764.1f(2)(b)(*iv*) (stating that a "dangerous weapon"

9

been made by the district court at the preliminary examination stage, or if not then, upon a challenge by defendant to the circuit court's exercise of jurisdiction following the bindover ruling.

The lower courts' failure to recognize this requirement appears to have been caused by an overbroad application of the decisions in *Buford*, *Hale*, and *Goolsby*. The appellate decisions in all three cases arose from convictions of felonious assault following jury trials, and the appeals presented the question of whether certain objects *could* be a dangerous weapon as a matter of law. *Goolsby* addressed whether an automobile could be a dangerous weapon for purposes of felonious assault under some circumstances, such as when used to run over the foot of a person. See *Goolsby*, 284 Mich at 377-379. *Buford* and *Hale* addressed felonious assault charges under MCL 750.82, and in each case the question was whether a type of footwear *could* be used in a way that made it a dangerous weapon. See *Buford*, 69 Mich App at 31-32 (holding that a boot can be a dangerous weapon); *Hale*, 96 Mich App at 345 (holding that a shoe can be a dangerous weapon when used in a dangerous manner, such as repeated kicks to a person's groin).

In each case, the Courts reached the unremarkable conclusion that the statutes at issue allowed an object not usually considered a weapon to become a weapon depending on how the object was used. The *Buford* Court held that because a boot "may be used as a dangerous weapon," "whether it was in fact used as a dangerous weapon is a question for the jury to determine as the fact finder," and thus the trial court did not err by presenting the question to the jury. *Buford*, 69 Mich App at 32. The same conclusion was reached in

---

includes "[a]n object or device that is used or fashioned in a manner to lead a person to believe the object or device is an object or device described in subparagraphs (*i*) to (*iii*)").

10

*Hale*: "It is for the fact finder to determine if the shoe was, in fact, employed in a dangerous manner. In the instant case, we are unable to conclude that the shoe was not a dangerous weapon as a matter of law." *Hale*, 96 Mich App at 345. While this Court was not as explicit with its holding in *Goolsby*, the same principle can be inferred because the defendant was convicted by a jury of felonious assault and the Court rejected his argument that an automobile could not be a dangerous weapon as a matter of law. See *Goolsby*, 284 Mich App at 378-380. Accordingly, if being armed with a dangerous weapon is an element of a crime and the statute allows an object to be such a weapon depending on its use, whether the object was used as weapon by the defendant is a question for the fact-finder.

But a material distinction exists between these cases and the current case. *Goolsby*,[10] *Buford*, and *Hale* all involved criminal charges of felonious assault,[11] MCL 750.82, where being armed with a dangerous weapon is a statutory element of the crime *that a fact-finder must find* to convict a defendant. In those cases, the defendant's status of being armed did not affect the court's jurisdiction over the offense or the offender. "Being armed" is not an element of AWIGBH,[12] which is what defendant was charged with

---

[10] As a predecessor to the modern felonious assault statute, 1931 PA 328, Ch XI, § 82 defined "felonious assault" as " '[a]ny person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony.' " *Goolsby*, 284 Mich at 377.

[11] Felonious assault occurs when a person "assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder . . . ." MCL 750.82(1).

[12] AWIGBH is a 10-year felony, and the legal elements are (1) a person assaults another (2) with intent to do great bodily harm, less than the crime of murder; *or* (1) a person assaults another (2) by strangulation or suffocation. MCL 750.84(1)(a) and (b). See also

11

here, and thus "being armed" does not need to be proved to a fact-finder to obtain a conviction even though it is a requirement for charging a juvenile as an adult under MCL 764.1f(2)(b). The courts below failed to give adequate weight to the jurisdictional implications of this distinction and ended their inquiry after concluding that a shoe *can* be used in a way that makes it a dangerous weapon as a matter of law. A more nuanced analysis is required when automatic waiver of jurisdiction is sought based on charging the juvenile as an adult with AWIGBH premised on a theory that the juvenile was "armed with a dangerous weapon." MCL 764.1f(2)(b)(*iii*).

This is precisely because "being armed" is not an element of AWIGBH, MCL 750.84(1), but being "armed with a dangerous weapon" is a requirement for waiver of the family court's jurisdiction under MCL 764.1f(2)(b). To convict the defendant here under MCL 750.84(1), a fact-finder *will not* be required to determine *at trial* whether the juvenile defendant carried, used, or possessed an object as a dangerous weapon.[13] See MCL 750.84(1). But before the circuit court can accept a waiver of jurisdiction under MCL 764.1f(2)(b), there must be a determination that the juvenile was armed. Stated differently,

---

*People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) ("The elements of assault with intent to do great bodily harm less than murder are '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.' "), quoting *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).

[13] The Legislature also did not list felonious assault, MCL 750.82, as a "specified juvenile violation" under MCL 764.1f(2).

MCL 764.1f(2)(b) adds an extra factual circumstance beyond the legal elements of AWIGBH that must be established to authorize waiver of the family court's jurisdiction.[14]

Therefore, as Judge HOOD's dissenting opinion recognized, being armed with a dangerous weapon is a prerequisite to the circuit court's assumption of jurisdiction over a juvenile charged with AWIGBH under MCL 764.1f(2)(b), and that determination requires a specific factual finding. That factual finding must be made by the district court before it binds over the charged juvenile defendant for felony prosecution in circuit court, or if the district court fails to make the requisite finding, by the circuit court once its jurisdiction has been challenged or sua sponte if concerns about jurisdiction are apparent. The failure to make such a finding creates the risk of a juvenile being improperly prosecuted as an adult for a felony offense without the additional protections our legal system typically affords juvenile offenders, see MCL 712A.2b, or a traditional waiver hearing, see MCL 712A.2d; MCL 712A.4; MCR 3.950(D).

The district court in this case never made factual findings that the athletic slide sandals and tennis shoes worn by the principal codefendant assailants were "used as . . . weapon[s] or carried or possessed for use as . . . weapon[s]." MCL 764.1f(2)(b)(*iii*). The circuit court also failed to make such findings. The Court of Appeals majority failed to catch these errors because of its overbroad application of the felonious assault

---

[14] The jurisdictional aspects of MCL 764.1f(2)(b) would still require a factual finding of being "armed with a dangerous weapon" for a juvenile charged with first-degree home invasion under MCL 750.110a(2)(a). However, because the offender's armed status would be an element of the charged offense, the factual findings required by MCL 764.1f(2)(b) would likely be subsumed in a court's probable cause analysis during a preliminary examination.

jurisprudence derived from *Hale*, *Buford*, and *Goolsby* to automatic waiver procedures under MCL 764.1f(2)(b)(*iii*). But for this Court's resolution of this case on alternative grounds that I agree with, these errors would have required reversal and a remand for additional proceedings and factual findings to ensure that the criminal division of the circuit court had properly obtained jurisdiction.[15]

## IV. CONCLUSION

The lack of factual findings that the shoes at issue were used, carried, or possessed as weapons *before* accepting a waiver of the family court's exclusive jurisdiction was an error requiring reversal and remand for further proceedings. This issue is moot because the Court has resolved the matter on alternative statutory grounds that preclude the prosecution of defendant from proceeding under MCL 764.1f(2)(b)(*iii*). It is my hope that the guidance provided by this concurrence will avoid erroneous application of MCL 764.1f(2)(b)(*iii*) in future cases.

Elizabeth M. Welch
Elizabeth T. Clement

---

[15] At oral argument, the prosecutor essentially conceded that a remand for further factual findings was necessary.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 165544

EVAN ANDREW OSLUND,

      Defendant-Appellant.

_____

VIVIANO, J. (*dissenting*).

This case represents yet another departure by this Court from the principle of party presentation and our rules of preservation. In our adversarial system, as a general rule, we rely on the parties to frame the issues and courts sit as neutral arbiters of the issues presented by the parties.[1] I would affirm the Court of Appeals on the only issue in this case that was presented by the parties and decided by the lower courts. I would not reverse the Court of Appeals on the basis of an unpreserved issue that was not argued or decided below. I therefore dissent.

---

[1] See *United States v Sineneng-Smith*, 590 US 371, 375; 140 S Ct 1575; 206 L Ed 2d 866 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in *Greenlaw v. United States*, 554 U.S. 237[, 243; 128 S Ct 2559; 171 L Ed 2d 399] (2008), 'in both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' "); see also *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, 502 Mich 695, 709-710; 918 NW2d 756 (2018) (applying *Greenlaw* and declining to reach an issue).

## I. THE CASE PRESENTED TO US

Defendant was bound over on a charge of assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, under an aiding and abetting theory, MCL 767.39. In the circuit court, defendant moved to quash the bindover and to dismiss for lack of personal jurisdiction. The only issue presented in both motions, and on appeal, was whether the shoes worn by defendant's two codefendants were dangerous weapons for the purposes of the juvenile automatic waiver statute (AWS), MCL 764.1f. Because defendant was charged as an aider and abettor, the entire focus of his arguments below was on the apparel worn by his two codefendants, who actually struck and injured an autistic classmate during the planned attack, while defendant allegedly encouraged them and recorded the attack on his cell phone for later distribution to other students. Defendant never argued that the actions of his codefendants could not be imputed to him for purposes of the AWS.

The Court of Appeals majority correctly held that the term "dangerous weapon" in the AWS should be construed consistently with the meaning given that term under the felonious-assault statute, MCL 750.82.[2] The majority cited previous decisions from the Court of Appeals holding that a shoe can be a dangerous weapon under MCL 750.82(1), and in each of those decisions, the Court of Appeals relied on *People v Goolsby*, 284 Mich

---

[2] *People v Oslund*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 2023 (Docket No. 360675), pp 3-4; see MCL 750.82(1) (stating that "a person who assaults another person with a . . . dangerous weapon . . . is guilty of a felony").

375; 279 NW 867 (1938).[3]  Finally, after noting that the AWS is in the Code of Criminal Procedure[4] and that the felonious-assault statute is in the Michigan Penal Code,[5] the Court of Appeals stated that the two codes " 'relate generally to the same thing and must therefore be read *in pari materia . . . .' "[6]  The Court of Appeals dissent reached the opposite conclusion.[7]  The dissenting judge then addressed an issue that no party raised, concluding that waiver under MCL 764.1f(2)(b) requires a defendant to be *personally* armed with a dangerous weapon during the assault.  And because there was no evidence that defendant was so armed, the dissenting judge concluded that waiver was improper here even if the shoes worn by the codefendants were dangerous weapons.[8]

This Court granted defendant's application for leave to appeal, and in our grant order, we asked the parties to brief whether "shoes can constitute dangerous weapons for purposes of MCL 764.1f(2)(b)[.]" *People v Oslund*, 511 Mich 1009, 1009 (2023).[9]  But

---

[3] See *Oslund*, unpub op at 3, citing *People v Buford*, 69 Mich App 27, 32; 244 NW2d 351 (1976), and *People v Hale*, 96 Mich App 343, 345; 292 NW2d 204 (1980), vacated on other grounds 409 Mich 937 (1980).

[4] MCL 760.1 *et seq*.

[5] MCL 750.1 *et seq*.

[6] *Oslund*, unpub op at 3, quoting *People v Washington*, 501 Mich 342, 354 n 29; 916 NW2d 477 (2018).

[7] *Oslund* (HOOD, P.J., dissenting), unpub op at 5-9.

[8] *Id*. at 9.

[9] The grant order was inartfully drafted.  The first issue should have inquired about the correctness of the Court of Appeals majority's interpretation of the statute and application of it *to this case*.  In other words, the issue should have been stated as whether the Court of Appeals majority properly held that the shoes worn by the codefendants and used during

3

then we decided to go further and ask the parties to brief the issue raised sua sponte by the Court of Appeals dissent, i.e., whether, "even if shoes can constitute dangerous weapons, the motion to quash should have been granted because there was no evidence that the defendant was 'armed with a dangerous weapon' during the assault as required by MCL 764.1f(2)(b)." *Id.*

MCL 764.1f(2)(b) provides that a prosecutor may charge a juvenile, as an adult, with AWIGBH, but only "if the juvenile is armed with a dangerous weapon." The statute defines "dangerous weapon" as, among other things, "[a]n object that is likely to cause death or bodily injury when used as a weapon and that is used as a weapon or carried or possessed for use as a weapon." MCL 764.1f(2)(b)(*iii*). As noted, the issue of whether the codefendants' shoes qualified as dangerous weapons under the statute was the only issue briefed and argued below, and it was the only issue the Court of Appeals majority addressed and resolved in its unpublished opinion.[10]

I agree with the conclusion reached by the Court of Appeals majority, but its analysis was incomplete. As the Court of Appeals dissent observed, "dangerous weapon"

the attack satisfied the requirement under MCL 764.1f(2)(b) that defendant was "armed with a dangerous weapon."

[10] A point of clarification is in order. To satisfy the statutory definition of a "dangerous weapon," which is at issue in this case, the object must be: (1) "likely to cause death or bodily injury when used as a weapon" and (2) "used as a weapon or carried or possessed for use as a weapon." MCL 764.1f(2)(b)(*iii*). Defendant's arguments below could fairly be interpreted as directed at both prongs of this definition. However, the district court judge declined to make a finding on whether the codefendants' shoes were used as weapons in the attack, instead stating his belief that how the shoes were used was a "question[] of fact for somebody else to decide." To the extent the district judge erred by not resolving this factual issue before binding the defendant over to the circuit court, the case should be remanded to the district court for that purpose.

4

is a defined term under the AWS. Therefore, the Court of Appeals majority should have begun its analysis by evaluating the plain meaning of MCL 764.1f(2)(b)(*iii*) and comparing it to the definition in *Goolsby* to determine if the Legislature was invoking the same meaning.[11] Doing so, the similarities in the definition set forth in *Goolsby*, 284 Mich at 378, and the statutory definition contained in MCL 764.1f(2)(b)(*iii*) are apparent: both address objects that are not inherently dangerous and only become so when used as a weapon against another person and, when so used, are capable of inflicting serious injury. Once these similarities are noted, it becomes clear that MCL 764.1f(2)(b)(*iii*) was intended to cover this same category of objects, i.e., those that are not inherently dangerous but may become so when used in an assault. After closely examining that statutory definition, I agree with the Court of Appeals majority that MCL 750.82 and MCL 764.1f(2)(b)(*iii*) should be read *in pari materia* because they relate to the same type of objects.[12]

---

[11] See *Goolsby*, 284 Mich at 378 ("Some weapons carry their dangerous character because so designed and are, when employed, *per se*, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose. The test as to the latter is whether the instrumentality was used as a weapon and, when so employed in an assault, dangerous. The character of a dangerous weapon attaches by adoption when the instrumentality is applied to use against another in furtherance of an assault. When the purpose is evidenced by act, and the instrumentality is adapted to accomplishment of the assault and capable of inflicting serious injury, then it is, when so employed, a dangerous weapon.").

[12] There are multiple reasons to question the Court of Appeals dissent's statutory interpretation, including its assertion that canons of construction are usually reserved for ambiguous statutes—an assertion that is misguided at best. As the dissent noted, some Court of Appeals panels have made that assertion. See, e.g., *Zug Island Fuels Co, LLC v Dep't of Treasury*, 341 Mich App 319, 327; 989 NW2d 879 (2022) (" 'Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning.' "), quoting *D'Agostini Land Co, LLC v Dep't of Treasury*, 322 Mich App 545, 554-555; 912 NW2d 593 (2018). But the research trail runs dry at *People v Borchard-Ruhland*, 460 Mich 278; 597 NW2d 1 (1999), the case cited by *D'Agostini Land Co*, which says nothing of the sort. See *Borchard-Ruhland*, 460 Mich at 284-285. Instead, "[m]ost interpretive canons apply to both ambiguity (as narrowly

## II. THE MAJORITY OVERREACHES TO DECIDE THE UNPRESERVED QUESTION OF WHETHER DEFENDANT WAS PERSONALLY ARMED WITH A DANGEROUS WEAPON

Because the Court of Appeals reached the correct result on the issue presented, the proper resolution of this case is an affirmance. However, this Court's majority opinion declines to resolve this issue—which, until now, has been the central issue in the case. Instead, the majority reaches for the issue raised sua sponte by the Court of Appeals dissent: whether the motion to quash should have been granted because there was no evidence defendant was *personally* "armed with a dangerous weapon." That issue was not argued or decided below, and the district judge did not make any factual findings on it.[13] I would

---

defined) and vagueness." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 33. Indeed, as the Court of Appeals dissent also recognized, *Oslund* (HOOD, P.J., dissenting), unpub op at 7, the doctrine applied by the Court of Appeals majority—i.e., *in pari materia*—"is not necessarily conditioned on a finding of ambiguity," *SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 73 n 26; 894 NW2d 535 (2017).

Next, the Court of Appeals dissent misapplied the canon of *ejusdem generis*; that canon appears to have no applicability whatsoever. See *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 242; 615 NW2d 241 (2000) (" '[Ejusdem generis] is a rule whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated.' ") (citation omitted; alteration in *Sands*). The dissent does not point to any general words in the statute—like the phrase "or other object," which appears in Subsection (2)(b)(*ii*)—that may be the proper focus of an *ejusdem generis* analysis. The dissent also appears to misread both the dictionary and *Goolsby* in concluding that a "dangerous weapon" must be used as "an instrument of combat." *Oslund* (HOOD, P.J., dissenting), unpub op at 6.

[13] The record contains no support for the majority opinion's half-baked assertion that defendant "implicitly argued that the circuit court lacked jurisdiction over him because *he* was not the one armed with a dangerous weapon." *Ante* at 5. Indeed, the majority points to defendant's argument that the circuit court should quash his bindover because " 'there was no weapon shown,' " *ante* at 5 n 2, but that assertion speaks broadly to whether a weapon was involved *at all*, not whether defendant personally possessed a weapon. Any

6

not decide this issue without the benefit of lower-court decision-making. It is a complex issue, and the majority's opinion raises more questions than it answers.

Because this issue was not fully vetted below, the majority opinion contains significant gaps. It does not meaningfully engage the prosecutor's aiding and abetting theory under MCL 767.39; instead, the majority only mentions it in passing.[14] The majority gives no rationale for its conclusion that MCL 767.39 is not controlling here.[15] Nor is it clear what the effect of the majority's holding will be on other serious crimes, such as home invasion.[16] It is also unclear how the majority's dictum—that "*the charged juvenile themselves* must meet the statutory requirements for waiving jurisdiction under MCL 764.1f(2)(b)"—will apply to other parts of the AWS, such as the attempt, conspiracy, and solicitation subsections. See MCL 764.1f(2)(e), (f), and (g). For instance, if the charge

---

doubt in the record is resolved by the fact that, after the trial court bound over defendant on the ground that *his codefendants* possessed weapons, defendant has never argued that their possession of weapons was irrelevant to the purportedly dispositive issue of whether *he* personally possessed the weapon. In short, the majority is simply wrong to suggest that this issue was adequately preserved or even presented below. The issue should be reviewed, if at all, for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[14] See MCL 767.39 ("Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, *aids, or abets* in its commission *may hereafter be prosecuted, indicted, tried* and on conviction shall be punished *as if he had directly committed such offense*.") (emphasis added).

[15] Cf. *People v Dupree*, 511 Mich 1, 9; 993 NW2d 185 (2023) (stating that the aiding and abetting statute does not speak to the scoring of offense variables (OVs); rather, the OV statute controls because it is the more specific statute).

[16] I agree with the majority that, for purposes of waiver under MCL 764.1f(2), its holding does not prohibit prosecutors from using an aiding and abetting theory to prove the elements of the underlying offense. See *ante* at 10 n 6.

7

in this case is amended on remand to conspiracy to commit assault with intent to commit great bodily harm less than murder, do all of the coconspirators need to be armed with a dangerous weapon to qualify under the AWS, or is it sufficient if one of them is?

Because the Court did not have the benefit of briefing or lower-court decisions on this complex issue, I would not address it.

## III. WAIVER UNDER THE AWS DOES NOT RELATE TO SUBJECT-MATTER JURISDICTION

Not content with the majority's decision to address an unpreserved issue, Justice CAVANAGH's concurrence would go even further to address a question that no party has ever asked: whether the AWS concerns personal jurisdiction or subject-matter jurisdiction. The Court has an obligation to address subject-matter jurisdiction—even sua sponte—if such jurisdiction is lacking. See generally *Fox v Bd of Regents of Univ of Mich*, 375 Mich 238, 242; 134 NW2d 146 (1965). But that is not the case here. The relevant constitutional provisions, statutes, and controlling precedent from this Court all confirm that the AWS only relates to personal jurisdiction.

As a preliminary matter, the specific type of jurisdiction implicated by the AWS is not dispositive in this case, so any holding on that issue would be dicta. That is certainly true under the majority's opinion, which decides the unpreserved AWS issue in defendant's favor. Defendant has therefore prevailed, and this case must be transferred to the family court regardless of whether another court may have had subject-matter jurisdiction. In addition, the majority held that defendant preserved that issue, *ante* at 5, so the different preservation requirements for each type of jurisdiction are irrelevant. In contrast, if this case had come to us on collateral attack after defendant was tried and convicted as an adult

8

in the criminal division, then the jurisdictional distinction would be dispositive.[17] But this case is here on interlocutory appeal, so the majority correctly declined to decide what type of jurisdiction is at issue here.

Turning to the merits, the criminal division's subject-matter jurisdiction is clearly unaffected by the AWS. As a starting point, the circuit court has very broad jurisdiction,[18] and the criminal division of the circuit court "unquestionably ha[s] [subject-matter] jurisdiction over felony cases," *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011), like the charge at issue here. MCL 600.606(1) also provides that the "circuit court has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 18 years of age."[19] Thus, it cannot seriously be doubted that the criminal division of the circuit court has subject-matter jurisdiction over this class of cases.[20]

---

[17] See *Jackson City Bank & Trust Co v Fredrick*, 271 Mich 538, 545; 260 NW 908 (1935) ("Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked.") (quotation marks and citation omitted).

[18] *People v Washington*, 508 Mich 107, 121; 972 NW2d 767 (2021) ("Under Michigan's 1963 Constitution, circuit courts have 'original jurisdiction in all matters not prohibited by law. . . .' "), quoting Const 1963, art 6, § 13.

[19] MCL 600.601(4) and MCL 600.1021(1)(e), along with MCL 712A.2(a)(1), govern the family division's jurisdiction.

[20] Justice CAVANAGH suggests that the criminal division does not have subject-matter jurisdiction over this case unless the prosecutor had reason to believe that defendant personally committed a specified juvenile offense. See *ante* at 5-6 (CAVANAGH, J., concurring). But the "reason to believe" standard comes from the AWS, MCL 764.1f, which governs *the prosecutor's* discretionary authority to file a complaint in the criminal

9

That broad grant of jurisdiction is significant because it is also well established that "retention of jurisdiction is presumed and any intent to divest the circuit court of jurisdiction must be clearly and unambiguously stated." *Campbell v St John Hosp*, 434 Mich 608, 614; 455 NW2d 695 (1990). "Circuit court jurisdiction over a particular subject matter is denied only by constitution or statute." *Id*. Such "divestiture of jurisdiction from the circuit court is an extreme undertaking" that "cannot be accomplished except under clear mandate of the law[.]" *Wikman v Novi*, 413 Mich 617, 645; 322 NW2d 103 (1982); see also *People v Veling*, 443 Mich 23, 32; 504 NW2d 456 (1993) (observing that "there is a presumption against divesting a court of its jurisdiction once it has properly attached, and any doubt is resolved in favor of retaining jurisdiction"). Thus, to the extent subject-matter jurisdiction is implicated in this case, the appropriate question is not whether a waiver under the AWS *confers* subject-matter jurisdiction on the criminal division of the circuit court, but rather whether any statute *divests* the criminal division of its broad subject-matter jurisdiction.

Justice CAVANAGH argues—without addressing the presumption against divestiture—that MCL 712A.2(a)(1) divests the criminal division of subject-matter jurisdiction. But nothing in that statute provides a "clear mandate" of divestiture. *Wikman*, 413 Mich at 645. Rather, the statute provides that the family division, in certain circumstances, has "[e]xclusive original jurisdiction *superior to* and *regardless of the jurisdiction of another court* in proceedings concerning a juvenile under 18 years of

_____

division. The AWS does not govern *the criminal division's* jurisdiction to adjudicate the case.

10

age . . . ." MCL 712A.2(a) (emphasis added).[21] That language does not divest the criminal division of subject-matter jurisdiction; it simply provides that the family division's jurisdiction is "superior to" the criminal division's *concurrent* subject-matter jurisdiction over these cases.[22]

Moreover, the plain language of MCL 712A.2(a)(1) suggests that the family division's jurisdiction—exclusive or otherwise—is not even applicable in this case. That paragraph provides, "The [family division of the] court has jurisdiction over a juvenile 14 years of age or older who is charged with a specified juvenile violation *only if* the prosecuting attorney files a petition in the [family division of the] court instead of authorizing a complaint and warrant." MCL 712A.2(a)(1) (emphasis added).[23] Here, of course, the prosecutor initiated this case by filing a complaint and warrant, not a petition in the family division. MCL 712A.2(a)(1) therefore seems to foreclose the family

---

[21] While Justice CAVANAGH is correct that MCL 600.1021 provides the family division "sole and exclusive jurisdiction" over certain cases, its jurisdiction over criminal prosecution of juveniles is limited to what is "provided in chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.1 to 712A.32." MCL 600.1021(1)(e).

[22] In *People v Kiyoshk*, 493 Mich 923 (2013), we cited an out-of-state decision for the rule that "absence of proper transfer order from juvenile to criminal court 'cannot be said to affect the court's subject matter jurisdiction.' " *Id*. at 924, quoting *Sawyers v State*, 814 SW2d 725, 729 (Tenn, 1991). *Sawyers* explained that "the court's subject matter jurisdiction, . . . in a real sense, *is concurrent with that of the juvenile court* as to certain offenses committed by children falling within a specified age span." *Sawyers*, 814 SW2d at 729 (emphasis added). And in reaching that conclusion, *Sawyers* noted that the relationship between the two courts in that type of case is described as " 'a system of concurrent jurisdiction.' " *Id*., quoting Model Penal Code § 4.10 and Revised Comment (1985).

[23] MCL 712A.1(e) defines "court" as "the family division of circuit court" for purposes of MCL 712A.2.

11

division's exercise of any jurisdiction that it might otherwise have over this type of criminal charge.[24] Thus, even if Justice CAVANAGH were correct that the family division's jurisdiction under MCL 712A.2(a)(1) is strictly exclusive rather than concurrent, that jurisdiction would not apply here, and therefore the statute cannot possibly divest the criminal division of its subject-matter jurisdiction over defendant in this case.

In sum, MCL 712A.2(a)(1) does not clearly divest the criminal division of its broad subject-matter jurisdiction over cases like this one. At most, MCL 712A.2(a)(1) simply provides that the family division has *concurrent* subject-matter jurisdiction that is superior in certain circumstances. Regardless, in this case, MCL 712A.2(a)(1) does not confer jurisdiction upon the family division because the prosecutor never filed a petition in that court. Thus, the criminal division's subject-matter jurisdiction is not in serious dispute.

As it turns out, this Court has already addressed this very issue in *Veling*, where we held that the 1988 amendment of MCL 712A.2(a) and enactment of MCL 764.1f "divested

---

[24] Notably, though, MCL 766.14(2) provides:

> If at the conclusion of the preliminary examination of a juvenile the magistrate finds that a specified juvenile violation did not occur or that there is not probable cause to believe that the juvenile committed the violation, but that there is probable cause to believe that some other offense occurred and that the juvenile committed that other offense, the magistrate shall transfer the case to the family division of circuit court of the county where the offense is alleged to have been committed.

The majority opinion holds that "defendant did not commit a 'specified juvenile violation' under MCL 764.1f(2)(b)," *ante* at 11, but it does not disturb the lower court's finding of probable cause that defendant aided and abetted the assault. Thus, at least under the majority's interpretation of MCL 764.1f(2)(b), remand to the family division is proper pursuant to MCL 766.14(2) even though the prosecutor has not filed a petition in the family court as required by MCL 712A.2(a)(1).

the probate court of its exclusive jurisdiction over juveniles and vested in the circuit courts *personal* jurisdiction over those juveniles charged with enumerated life offenses." *Veling*, 443 Mich at 31 (emphasis added).[25] See also *People v Kiyoshk*, 493 Mich 923, 923 (2013) ("A circuit court's authority to exercise jurisdiction over a defendant charged with a felony committed as a minor constitutes a question of personal, not subject matter, jurisdiction."). Once the "prosecutor authorizes a complaint and warrant in the circuit court, the circuit court has personal jurisdiction over juveniles charged with enumerated life offenses." *Veling*, 443 Mich at 31.[26] The criminal division of the circuit court only "loses jurisdiction over the juvenile," i.e., personal jurisdiction, if the prosecutor's "belief [that the juvenile

[25] In 1998, the Legislature created the family division of the circuit court and enacted MCL 600.1009, which provides that "[a] reference to the former juvenile division of probate court in any statute of this state shall be construed to be a reference to the family division of circuit court."

[26] Because personal jurisdiction attaches *automatically* under the AWS, the prosecution has broad discretion in its initial charging decision. See *People v Conat*, 238 Mich App 134, 149; 605 NW2d 49 (1999) ("The prosecutor is given broad charging discretion, and judicial review of the exercise of that discretion is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires.") (citation omitted). See generally *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 684; 194 NW2d 693 (1972) (noting that because the determination of charges is an executive act, "[f]or the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers. . . . It also violates our fundamental sense of fair play").

Justice CAVANAGH confuses the grant of charging discretion to the prosecutor with a limitation on the criminal division's subject-matter jurisdiction. See *ante* at 5-6 (CAVANAGH, J., concurring). To be clear, even assuming the prosecutor did not have reason to believe that defendant committed a specified juvenile violation, that only means the prosecution acted outside its authority by filing a complaint in the criminal division. In turn, without a valid complaint, the criminal division would not have personal jurisdiction over defendant. But none of that implicates the criminal division's subject-matter jurisdiction, which turns on which charges would be included in the complaint.

13

committed the charged enumerated offense] is not sustained by probable cause . . . ." *Id*. at 31-32. But "[i]f probable cause is established, the circuit court has both personal jurisdiction over the juvenile *and, of course, subject matter jurisdiction* over the alleged enumerated offense." *Id*. at 32 (emphasis added).[27] Thus, this Court has already resolved the question of which type of jurisdiction is implicated by the AWS, emphatically answering that it is *personal* jurisdiction.

Twenty years later, this Court's decision in *Kiyoshk* specifically addressed the relationship between the AWS and jurisdiction.[28] The Court explained:

> Defendant's age when the offense was committed does not pertain to the "kind or character" of the case, but rather constitutes a defendant-specific, "particular fact[]." Whether defendant was of an age that made circuit court jurisdiction appropriate is thus a question of personal jurisdiction. [*Kiyoshk*, 493 Mich at 923 (citation omitted; alteration in *Kiyoshk*).]

In other words, because a condition of triggering the AWS statute (i.e., the defendant's age) did not relate to an element of the underlying offense, the question of whether such condition exists is a question of personal jurisdiction. That same dynamic applies here, where the condition triggering the AWS statute (i.e., use of a dangerous weapon) is not an

---

[27] In *People v Hill*, the companion case to *Veling*, the prosecutor appealed the circuit court's decision to grant the defendant's "motion to dismiss counts . . . on the ground that the circuit court lacked subject matter jurisdiction to try him," *Veling*, 443 Mich at 29-30, which means the Court's disposition of this issue was necessary to its holding and is therefore binding.

[28] *Kiyoshk* addressed a waiver under the same statutes at issue here: the AWS, MCL 712A.2, and MCL 600.606. See *People v Kiyoshk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2011 (Docket No. 295552), p 3. And, unlike this case, *Kiyoshk* involved a motion for relief from a final judgment, *id*. at 2, and therefore the Court needed to address the distinction between subject-matter jurisdiction and personal jurisdiction.

14

element of the underlying offense, AWIGBH, under MCL 750.84(1)(a).[29] Rather, the use of a dangerous weapon "constitutes a defendant-specific, 'particular fact[].' " *Kiyoshk*, 493 Mich at 923 (citation omitted; alteration in *Kiyoshk*). Thus, as in *Kiyoshk*, any error pertaining to the AWS here would concern personal jurisdiction.

Given this Court's holdings in *Veling and Kiyoshk*, I see no basis to question whether a waiver concerns the criminal division's subject-matter jurisdiction. Even a cursory review of the issue leads to the conclusion that it does not. Questions about whether a waiver under the AWS was proper relate only to the court's personal jurisdiction, not its subject-matter jurisdiction. *Veling*, 443 Mich at 31; *Kiyoshk*, 493 Mich at 923.[30]

## IV. CONCLUSION

The Court of Appeals did not clearly err by finding that the shoes worn by defendant's codefendants were dangerous weapons under the AWS. I would not dispense

---

[29] Justice CAVANAGH's attempt to distinguish *Veling* because the question of personal jurisdiction in that case turned on the defendant's age, therefore, is not persuasive. The clear logic of *Veling* applies with full force here and is controlling. Moreover, in addition to *Veling*, this Court in *Kiyoshk* cited several cases for the broader rule that questions relating to the propriety of the waiver process implicate personal jurisdiction.

As explained, because personal jurisdiction attaches upon the prosecution's filing of a claim, the issue of personal jurisdiction regarding the elements of the crime in connection with an AWS waiver is only implicated if the defendant contests probable cause during the preliminary examination.

[30] The ramifications of the holding that Justice CAVANAGH apparently prefers—overruling *Veling* and *Kiyoshk*—would extend well beyond this case. Unlike subject-matter jurisdiction, "a party may stipulate to, waive, or implicitly consent to *personal* jurisdiction." *Lown*, 488 Mich at 268. And unlike cases involving only an erroneous exercise of jurisdiction, cases involving a lack of subject-matter jurisdiction can be attacked collaterally at any time in Michigan. See *In re Ferranti*, 504 Mich 1, 22; 934 NW2d 610 (2019).

with the safeguards of party presentation and our preservation rules to reach a new issue on appeal that is not properly before us.  Instead, I would affirm the Court of Appeals and decline to reach the second issue in our grant order.  I respectfully dissent.

David F. Viviano